**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BUTTNUGGET PUBLISHING, CORE MUSIC**
**PUBLISHING, BIG SKY MUSIC, DWARF MUSIC,**
**MPCA KING OF SPADES, RAMS HORN MUSIC,**
**SNIDEST MUSIC and SPECIAL RIDER MUSIC,**

                                        **Plaintiffs,**

              **vs.**                                        **8:11-cv-318**
                                                             **(MAD/RFT)**

**RADIO LAKE PLACID, INC., PRESCOTT HOUSE,**
**LLC and EDWARD S. MORGAN,**

                                        **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**LAW OFFICES OF GARY A. ROSEN, P.C.**    **GARY A. ROSEN, ESQ.**
1831 Chestnut Street, 7th Floor
Philadelphia, Pennsylvania 19103
Attorneys for plaintiffs

**BOND, SCHOENECK & KING, PLLC**          **LOUIS ORBACH, ESQ.**
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On March 21, 2011, plaintiffs filed the present copyright infringement action.  *See* Dkt.

No. 1.  Defendants have failed to answer or move against the Complaint, or to otherwise appear in

this action.  Currently before the Court is plaintiffs' unopposed motion for a default judgment.

*See* Dkt. No. 13.

### II. BACKGROUND

Plaintiffs are music publishing companies and owners of the copyrights to the thirty-three musical compositions at issue in this case.[1]  *See* Dkt. No. 1 at ¶¶ 4-11.  Plaintiffs are all affiliates of SESAC, Inc. ("SESAC"), a "performing rights society" under the Copyright Act, 17 U.S.C. § 101, *et seq.*  Plaintiffs seek injunctive relief and damages for defendants' alleged repeated and unauthorized public performances of plaintiffs' copyrighted musical compositions on defendants' owned and operated radio station.  *See id.* at ¶ 1.

Defendant Prescott House, LLC ("Prescott") and defendant Radio Lake Placid, Inc. are engaged in the business of owning and operating commercial radio stations, including WLPW-FM, in Lake Placid, New York.  *See id.* at ¶ 13.  Defendant Morgan is the president of defendant Radio Lake Placid and the sole member of defendant Prescott.  Plaintiffs allege that defendant Morgan determines and/or has the ability to control the policies and practices of WLPW-FM regarding the licensing and performance of music, including the decision to forego licensing of public performance rights for the subject musical compositions.  *See id.* at ¶ 14.

Plaintiffs allege that from January of 1990 until March 26, 2010, WLPW-FM was authorized to perform the works of any and all SESAC affiliates under a blanket license. Beginning in April 2009, however, WLPW-FM, as well as several other commonly owned stations, ceased making its monthly payments of license fees as required under the applicable SESAC license.  *See* Dkt. No. 13-1 at ¶ 4.  Plaintiffs allege that it is SESAC's and its associates'

---

[1] The thirty-three musical compositions at issue in this case are "Got Me Wrong," "Would," "Anthem," "Finding My Way," "Fly by Night," "Freewill," "La Villa Strangiato," "Lakeside Park," "Limelight," "New World Man," "Roll the Bones," "Subdivisions," "The Spirit of Radio," "Tom Sawyer," "If Not for You," "All Along the Watchtower," "Most Likely You Go Your Way (And I'll Come Mine)," "One of Us Must Know," "Rainy Day Women #12 & 35," "Visions of Johanna," "I Want You," "Crossroads," "Forever Young," "Knockin' on Heaven's Door," "Simple Twist of Fate," "Tangled Up in Blue," "I Wanna Rock," "Blind Willie McTell," "Highway 61 Revisited," "House Carpenter," "Maggie's Farm," "The Levee's Gonna Break," and "What Was It You Wanted."  *See* Dkt. No. 1 at ¶¶ 4-11.

longstanding policy to terminate licenses for non-payment and to commence litigation only when all reasonable efforts to bring a radio station operator into voluntary compliance with its obligations under the copyright law have been exhausted.  Plaintiffs claim that SESAC's repeated efforts to amicably resolve the issues concerning defendants' arrearage were ignored by defendants.  *See id.* at ¶ 5.  SESAC's in-house and outside counsel wrote letters to defendants urging them to enter into arrangements for paying the arrearage and informed defendants that their SESAC licenses were subject to termination for default and that, upon termination, any unauthorized performances of the musical works in the SESAC repertory could result in "claims for willful copyright infringement with damages that range up to $150,000 per song under federal statute 17 U.S.C. § 504(c)."  Defendants, however, did not respond to these letters.  *See id.* at ¶¶ 6-7.

Thereafter, on February 23, 2010, SESAC's in-house counsel notified defendants in writing that their SESAC license for WLPW-FM would be terminated effective March 26, 2010 unless the arrearage was cured by that date.  Plaintiffs claim that defendants ignored this letter and, on March 26, 2010, plaintiffs terminated WLPW-FM's license.  As such, plaintiffs assert that, as of that date, WLPW-FM was not authorized to perform any of the songs which are the subject of this suit publicly.  *See id.* at ¶ 8.  During the period of April 23, 2010 to April 28, 2010, subsequent to the termination of the SESAC license, SESAC monitored WLPW-FM's broadcasts and detected unauthorized performances of the thirty-three copyrighted works that are the subject of this action.  *See id.* at ¶ 9.

Plaintiffs commenced this action on March 21, 2011 by filing a complaint against defendants for willful copyright infringement.  *See* Dkt. No. 1.  Plaintiffs served the Summons and Complaint on defendants on April 2, 2011, making their responses due on April 25, 2011.

*See* Dkt. No. 13-2 at ¶ 4.  To date, none of the defendants filed an answer or motion in response to the Complaint.

On April 29, 2011, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, plaintiffs requested an entry of default against all defendants.  *See* Dkt. No. 11.  On May 2, 2011, the Clerk of the Court entered a default against defendants.  *See* Dkt. No. 12.  On June 28, 2011, plaintiffs filed the present motion seeking a default judgment against defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 13.  Defendants failed to respond to the motion.

## III. DISCUSSION

### A.    Standing

Although not raised by the parties, the Court, in the interests of clarity and completeness, first addresses whether plaintiffs have standing to bring this action.

"The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persona who have been granted exclusive licenses by owners of copyrights."  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982) (citing 3 Nimmer on Copyright § 12.02 at 12–25 (1982)).  A non-exclusive licensee does not have standing to commence a copyright infringement action.  *See Bertolino v. Italian Line*, 414 F. Supp. 279, 284 (S.D.N.Y. 1976) (holding that, "[i]n a suit under the copyright laws it is axiomatic that only the proprietor of the copyright has standing to sue for its infringement").

Defendants have not disputed that plaintiffs own the copyrights for the subject musical compositions and that plaintiffs have granted SESAC, a performing rights licensing organization,

the right to license non-dramatic public performances of plaintiffs' copyrighted musical compositions.  Since plaintiffs are the owners of the copyrights at issue in this action, plaintiffs have standing to sue in their own names.

**B.      Entry of default judgment**

"Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the court may enter judgment against the defaulting party."  *Coated Fabrics Co. v. Mirle Corp.*, No. 06-CV-5415, 2008 WL 163598, *4 (E.D.N.Y. Jan. 16, 2008) (citing Fed. R. Civ. P. 55(b)).  "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain procedural prerequisites that must be met before a default judgment may be entered[.]"  *Pert 35, Inc. v. Amari Aviation Ltd.*, No. 09-CV-0448, 2010 WL 1257949, *3 (N.D.N.Y. Mar. 5, 2010) (citations omitted).  More specifically, in order to grant plaintiff's motion for default judgment, plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service."  *Id.* (citing Fed. R. Civ. P. 55(b)(2); N.Y.N.D. L.R. 55.1 and 55.2) (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages."  *Coated Fabrics Co.*, 2008 WL 163598, at *4 (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp., v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  In determining whether to enter a default judgment, the Second

Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (citations omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (citations omitted). Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Id.* (citations omitted). Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. *See Enron Oil Corp.*, 10 F.3d at 95; *see also Rodriguez v. Almighty Cleaning, Inc.*, ___ F. Supp. 2d ___, 2011 WL 1130276, *6 (E.D.N.Y. Mar. 28, 2011) (citations omitted). Specifically, the court considers "(1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Rodriguez*, 2011 WL 1130276, at *6 (quotation and other citations omitted); *see also Mason Tenders District Council Welfare Fund v. M & M Contracting & Consulting*, 193 F.R.D. 112, 114–15 (S.D.N.Y. 2000) (citation omitted). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt

6

exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

A plaintiff asserting copyright infringement may be granted a default judgment where the defendant has failed to answer or to move against the complaint. *See Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996).  Here, defendants have not moved against the Complaint and have failed to answer.[2]  Moreover, plaintiffs have properly served defendants with the Complaint, obtained an entry of default, and provided an affidavit setting forth all of the requirements set forth above.  *See* Dkt. No. 13-2.  Further, as discussed below, the Court is unaware of any defense that defendants may have.  Finally, defendants appear to be willfully ignoring the matter presently before the Court.

Accordingly, plaintiffs may be granted the default judgment they seek, provided that the well-pleaded allegations of the Complaint establish the alleged copyright violations.

## C.      Elements of copyright infringement

"[P]erformances, made without a license or authorization from the copyright owners, constitute copyright infringements in the works." *Broadcast Music, Inc.*, 919 F. Supp. at 659 (citing cases).  To prove a copyright infringement claim based on an unauthorized public performance requires a plaintiff to establish "(1) originality and authorship; (2) compliance with the formalities of the Copyright Act; (3) their ownership of the copyrights involved; (4) the defendant's public performance of the compositions for profit; and (5) the latter's failure to obtain permission from the plaintiffs or their representatives for such performances." *Shapiro, Bernstein*

---

[2] In fact, defendants have not appeared in this action and have failed to respond to the present motion.

*& Co., Inc. v. Club Lorelei, Inc.*, No. 93-CV-0439E(M), 1995 WL 129011, *2 (W.D.N.Y. Mar.14, 1995) (citing *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 n.9 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993)) (other citations omitted).  A copyright registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c); *see also Gund, Inc. v. Applause, Inc.*, 809 F. Supp. 304, 307 (S.D.N.Y. 1993) (citations omitted).

Further, "[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable.'"  *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 596 F. Supp. 28, 33 (S.D.N.Y. 1984) (quoting *Screen Gems–Columbia Music, Inc. v. Metlis and Lebow Corp*., 453 F.2d 552, 554 (2d Cir. 1972)).  "'[A]ny individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for that infringement.'"  *Realsongs, Universal Music Corp. v. 3A North Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 85 (E.D.N.Y. 2010) (quoting *Shady Records, Inc. v. Source Enters., Inc.*, No. 03 Civ. 9944, 2005 WL 14920, *23 (S.D.N.Y. Jan. 3, 2005)) (other citation omitted).  As such, a defendant may be held liable for copyright infringement "if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (citation omitted).

In the present matter, defendants failed to oppose plaintiffs motion for default judgment and plaintiffs have sufficiently pled all of the elements of a cause of action for copyright infringement.  Specifically, defendants own the rights to all thirty-three musical compositions at issue and they further assert that they have valid copyright registrations for each.  *See* Dkt. No. 1 at ¶¶ 17, 23, 29, 35, 41, 47, 53, 59, 65, 71, 77, 83, 89, 95, 101, 107, 113, 119, 125, 131, 137, 143,

149, 155, 161, 167, 173, 179, 185, 191, 197, 203 and 209.  Moreover, plaintiffs assert that these musical compositions were publically performed on defendants' radio station on several occasions, after the license had expired and without plaintiffs' permission.  *See id.* at Counts I-XXXIII.  Further, plaintiffs assert that these performances were for profit.  *See id.*

Regarding the issue of joint and several liability, plaintiffs have sufficiently pled the necessary elements.  Specifically, plaintiffs allege that defendants Prescott and Radio Lake Placid, Inc. are New York corporations, that are engaged in the business of owning and operating commercial radio stations, including WLPW-FM in Lake Placid, New York.  *See id.* at ¶¶ 12-13.  Moreover, plaintiffs allege that defendant Morgan is a resident of New York and that he is the president of defendant Radio Lake Placid and sole member of defendant Prescott.  *See id.* at ¶ 14.  As such, plaintiffs assert that defendant "Morgan determines, and/or has the ability to control the policies and practices of their owned and operated radio station regarding the licensing and performance of music on their radio station, including the decision to forego licensing of public performance rights for the subject musical compositions through a blanket license from SESAC, Inc. or any other source."  *See id.*  Finally, plaintiffs claim that defendant Morgan had the ability to supervise and profited from this conduct as president of defendant Radio Lake Placid and the sole member of defendant Prescott.

Based on the foregoing, the Court finds that plaintiffs have alleged facts sufficient to establish the alleged copyright infringements and that all defendants may be held joint and severally liable for the alleged infringements.

**D.     Remedies**

Plaintiffs seek compensatory and/or statutory damages of $150,000 per count, "with respect to each of the infringed works on each cause of action herein, commensurate with the multiple and willful copyright infringements documented herein by Defendants who, as sophisticated commercial users of copyrighted music, were well aware of their obligations under the Copyright Act." *See* Dkt. No. 1 at 37.  Further, plaintiffs seek an award of costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.  *See id.*

In addition to a monetary award, plaintiffs also seek a permanent injunction, enjoining "[d]efendants and all persons acting under their direction, control, permission or authority . . . from publically performing the aforementioned compositions and from causing, permitting or aiding and abetting their public performance by the aforementioned radio stations and websites owned, operated and controlled by [d]efendants."  *See id.*  Moreover, defendants seek a permanent injunction enjoining "[d]efendants and all persons acting under their direction, control, permission or authority . . . from publically performing any other copyrighted compositions published by the Plaintiffs herein without license from SESAC, Inc. or authorization from any other source."  *See id.*

### 1. Permanent injunction

"Pursuant to 17 U.S.C. § 502, a permanent injunction may issue on such terms as the court deems 'reasonable to prevent or restrain infringement of a copyright.'"  *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (quoting 17 U.S.C. § 502).  "A permanent injunction is appropriate when infringement by unauthorized public performances has been proven."  *Gladys Music v. Bilbat Radio, Inc.*, No. 07-CV-6086, 2007 WL 3033960, *2 (W.D.N.Y. Oct.15, 2007) (citing *Broad. Music, Inc. v. Sonny Inc. Assoc., Inc.*, 865 F. Supp. 110, 114 (W.D.N.Y. 1994)) (other

citation omitted); *see also Barnaby Music Corp. v. Catoctin Broad. Corp.*, No. CIV-86-868E, 1988 WL 84169, *3 (W.D.N.Y. Aug. 10, 1988) (granting permanent injunction against the defendant radio station that, after being confronted regarding their copyright infringing conduct, continued to remain unlicensed, thereby establishing the threat of continued copyright violations).

Nevertheless,

> "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Granite Music Corp. v. Center Street Smoke House, Inc.*, ___ F. Supp. 2d ___, 2011 WL 1898909, *9 (W.D.N.Y. 2011) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)).[3]

In the present matter, plaintiffs have met the requirements necessary for the Court to issue a permanent injunction. Specifically, the uncontroverted allegations in the Complaint, as supplemented by the declarations and exhibits accompanying plaintiffs' motion for default judgment, establish that defendants infringed plaintiffs' copyrights despite knowledge of those copyrights. In particular, the uncontested facts establish that defendants have infringed plaintiffs' copyrights despite being repeatedly advised, since April 2009, by SESAC, Inc. of the need to pay their licensing fees to be able to lawfully present public performances of musical compositions

---

[3] Although *eBay, Inc. v. MercExhange, L.L.C.*, was a patent infringement case, the Second Circuit has applied the same four factors in considering whether to grant a preliminary injunction in a copyright infringement action. *See Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) (citations omitted).

within SESAC Inc.'s repertoire and that defendants permitted their radio stations to continually play the copyrighted material.  *See* Dkt. No. 13-1 at ¶¶ 4-11; *see also Broadcast Music, Inc. v. Northern Lights, Inc.*, 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) (holding that "[t]he complaint and affidavits submitted by plaintiffs establish that [defendant] has been repeatedly informed of the infringement of the plaintiffs' copyrights, and has failed to desist in such conduct. . . .  As such, the plaintiffs are entitled to a permanent injunction enjoining the [defendant] from infringing musical compositions licensed by [plaintiff]" (citation omitted)).  Moreover, plaintiffs indicate that defendants have not renewed their license to perform these works.  Plaintiffs actions continue to cause damage which cannot be adequately compensated by a monetary award alone.

Moreover, the Court finds that the balance of hardships tips decidedly in plaintiffs' favor.  Requiring plaintiffs to commence litigation for each future violation would be an extreme hardship, while preventing defendants from continually infringing on plaintiffs' copyrighted material is not.  Further, as the Second Circuit has noted, "[i]n the copyright realm, its has been said that an injunction should be granted if the denial would amount to a forced license to use the creative work of another."  *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) (citations omitted).  This is such a situation, in that "'the failure to issue a final injunction' would 'be tantamount to the creation of a compulsory license, future damages then becoming a sort of royalty.'"  *Id.* (quotation omitted).  Finally, nothing before the Court indicates that the public interest would be disserved by a permanent injunction.

Based on the foregoing, the Court holds that plaintiffs are entitled to a permanent injunction pursuant to 17 U.S.C. § 502.  *See Gladys Music*, 2007 WL 3033960, at *2; *see also Granite Music Corp.*, 2011 WL 1898909, at *10; *Broadcast Music, Inc.*, 555 F. Supp. 2d at 332 (citation omitted).

### 2. Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *see also Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009).

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citations omitted).  As relevant, Rule 55(b)(2) provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).  Nevertheless, the amount of damages to award in connection with a default judgment may be decided by the court without a hearing.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustock v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that "'it [is] not necessary for the District Court to hold a hearing, as long as it ensured there was a basis for the damages specified in the default judgment'")) (other citations omitted).  Here, the Court finds that the record is insufficient to permit a determination on damages without a hearing.

Plaintiffs request that, in lieu of actual damages and profits, statutory damages be awarded pursuant to 17 U.S.C. § 504(c).  Pursuant to 17 U.S.C. § 504(c), an award of statutory damages shall be "not less than $750 or more than $30,000" for "all infringements involved in the action, with respect to any one work . . . as the court considers just." 17 U.S.C. § 504(c)(1).  If the

"infringement was committed willfully," however, the court may increase the award of statutory damages to a sum of up to $150,000.  *See id.* § 504(c)(2).  Statutory damages are calculated according to the number of copyrighted works infringed, rather than the number of infringements of each copyrighted work.  *See Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (citation omitted).[4]

"In determining a proper statutory damages award, courts generally consider 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiff as a result of the defendants' conduct, and the infringers' state of mind.'" *Broadcast Music, Inc.*, 555 F. Supp. 2d at 332 (quoting *Golden Torch Music Corp. v. Pier III Café, Inc.*, 684 F. Supp. 772, 774 (D. Conn. 1988)).  "Additionally, 'to put infringers "on notice that it costs less to obey the copyright laws than to violate them," . . . a statutory damage award should significantly exceed the amount of unpaid license fees.'" *Id.* (quotations omitted).  "As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent." *Id.* at 332-33 (citations omitted).[5]

---

[4] Under the Copyright Act of 1909, damages were available for each separate infringement of a particular work.  *See Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1102 (2d Cir. 1976); *see also Twin Peaks Products. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993) (citation omitted).  The Copyright Act of 1976, however, shifted the measure of damages from the number of infringements to the number of works.  *See* 17 U.S.C. § 504(c)(1) (providing that the court may make "an award of statutory damages for all infringements involved in the action, with respect to any one work"); *see also* H.R. Rep. No. 1476, 94th Cong., 2d Sess. at 162 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News at 5659, 5778 (providing that "[a] single infringer of a single work is liable for a single amount . . . no matter how many acts of infringement are involved in the action[.]"); *accord Twin Peaks Products.*, 996 F.2d at 1381 (citation omitted).  Consequently, as a result of their default, defendants are found to have infringed upon thirty three of plaintiffs' copyrights; and, therefore, the Court will award damages for each work, not each infringement.

[5] The fact that deterrence of infringing conduct is an important element of statutory damages under the Act is demonstrated by the fact that since adoption of the present Copyright Act in 1976, Congress has twice increased the statutory damages range under section 504(c)(1),

(continued...)

In the present matter, plaintiffs seek $150,000 for each of the thirty three (33) alleged infringed copyrighted works.  Specifically, plaintiffs assert that,

> [i]n light of the many reminders and warnings which Defendants received prior to April 2010, when the infringing performances occurred, Defendants' copyright infringements must be deemed willful and therefore subject to statutory damages of up to $150,000 per copyrighted work under 17 U.S.C. § 504(c)(2).  In an action tried by a jury in the Western District of Pennsylvania against a local Pittsburgh radio broadcaster in November 2002, SESAC was indeed awarded statutory damages of as much as $150,000 for infringements found to be willful.  (Exhibit H hereto) This verdict was upheld on post-trial motions.  (Exhibit I hereto) Accordingly, Plaintiffs respectfully request that the Court enter default judgment against Defendants, jointly and severally, in the amount of $4,950,000 ($150,000 x 33 copyrighted works).

*See* Dkt. No. 13-1 at ¶ 13.

Considering the fact that plaintiffs seek the maximum statutory damages for each of the thirty-three infringed works and in light of the fact that defendants have failed to appear in this matter, the Court finds that it is inappropriate to award damages without first conducting a hearing.  *See Interscope Records v. Owusu*, No. 5:05-CV-102, 2007 WL 2343676, *3 (N.D.N.Y. Aug. 13, 2007) (holding that, "[i]n cases where ***minimum statutory damages*** are sought, once infringement is established it is unnecessary to conduct a trial or, in the case of a default judgment, a damage inquest or hearing" (citing cases)) (emphasis added).  Unlike *Interscope Records*, where the plaintiff was "seeking only the minimum statutory damages of $750 per work," plaintiffs here seek $150,000 for each infringed work, for a total of $4,950,000.

---

[5](...continued)
increasing the minimums and maximums, respectively, from $250 to $500 and $10,000 to $20,000 in 1988, *see* Pub. L. 100-568, 102 Stat. 2853, 2860 (Oct. 31, 1988), and again in 1999 to the current range of between $750 and $30,000, *see* Pub. L. 106-160, 113 Stat. 1774 (Dec. 9, 1999).

Moreover, the Court believes that a hearing will help provide additional information regarding the appropriateness of such an award and will allow plaintiffs to explain why a significantly reduced award would not accomplish the deterrent effect envisioned by the Copyright Act, while still adequately compensating plaintiffs.  Finally, a hearing will also provide defendants one final opportunity to appear in this matter to challenge plaintiffs position regarding an appropriate award.[6]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that plaintiffs' motion for default judgment is **GRANTED** as to liability; and the Court further

**ORDERS** that plaintiffs shall serve a copy of this Memorandum-Decision and Order on all defendants by Certified Mail, return receipt requested, and file both proof of service and receipt with the Court; and the Court further

**ORDERS** that defendants are permanently enjoined from any further unauthorized or unlicensed performance of any of the works in plaintiffs' repertory; and the Court further

**ORDERS** that plaintiffs' counsel shall initiate a telephone conference with the Court on **August 10, 2011, at 11:00 a.m.**, to set a date for the damages hearing discussed herein.

---

[6] Since the Court has declined to award damages without first conducting a hearing, the Court declines to address the issue of attorneys' fees and costs at this juncture.  As such, plaintiffs are permitted to supplement their filings relating to attorneys' fees and costs after the Court has conducted the damages hearing.

**IT IS SO ORDERED.**

Date:   August 5, 2011
        Albany, New York

Mae A. D'Agostino
U.S. District Judge